The next case is Ronald White v. Secretary of HHS, 2024-1372. Ms. Roquemore. Ms. Roquemore. Good morning, Your Honors. As you said, Lisa Roquemore here for the petitioner, Ron White, and the appellant here in this case. We're changing topics here. We're talking about the vaccine program. And in the vaccine program, we are always talking about very rare events. In the case of Guillain-Barre, which you'll also hear talked about as GBS, some infections are always have an increased statistical rate of causing GBS than an influenza vaccine. Mr. White, in this case, had the influenza vaccine, which led to GBS within the appropriate period of time, which made it a what we call a table case that gives us the presumption of causation. But there's fact-finding here and a predominance of the evidence standard. And the issue was sole substantial cause. And the special master found that the sole substantial cause was H-flu, not influenza vaccine. H-flu bacterial infection. He did absolutely find that, and we believe there was legal error in doing so because it was in contravention of this court's cases, case law, in Knudsen, Shyface, Walther, where the respondent has the burden of proof because the burden did transfer over to them. They have the burden of proof of showing that their alternative factor, the H-influenza, was the sole substantial cause and that the influenza vaccine could be excluded. And that particular question that you addressed, that is a factual question, correct? No, I believe it's legal error. There is some, I'm going to call it questions of fact, but I think there's legal error by ignoring the edicts of this court that you cannot use statistics in order to find that an alternative factor was the sole substantial cause of, in this case, the GBS. Have you said that you can't use statistics both at ALF and PRONG-1 and ALF and PRONG-2? This is a separate discussion from, obviously, part of the burden of proof of the respondent is that they must first, as a foundational matter, prove their ALF and PRONGs. They did not. They did not present any evidence on PRONG-1 on the... I thought they pointed to a whole bunch of literature that showed that the H-flu infection can cause GBS. Did they not? They did point to a bunch of literature, not a bunch, three specifically that deal with H-influenza. The others kind of broad-brushed and combined influenza-like infections, but we're talking about H-influenza. And to your question, the ALF and PRONGs, the literature, did not deal with a reasonable medical theory. It talks about associations. It talks about statistics. It does not tell us, and nor did the expert for respondent have in her expert report, any medical theory. She relied solely on the articles that deal with statistically H-influenza. I understand ALF and PRONG-1 to be, is there evidence of a medical theory causally connecting here the H-influenza and GBS?  Is that correct? Yes. So have we said that you can't rely on statistics at that step one or PRONG-1? I have not seen a case before, either from the federal circuit, from the offices of the special masters, or from the federal court of claims, that says that you can rely on statistics in order to meet your PRONG-1. In fact, the chief special master has put petitioner's feet to the fire significantly in order to show things like not only just molecular mimicry, because the recitation of molecular mimicry is insufficient from his particular standpoint in terms of proving what a reasonable medical theory is. So you have to have something more than just cases or studies that say statistically this can happen. How, how in this case you must show how can it happen? And that didn't occur in this case. My understanding of PRONG-2 is a logical sequence of cause and effect showing that here the infection is the reason for Mr. White's GBS specifically. Is that a fair understanding of what the step two analysis would be with the burden on the government? The first PRONG is, in simple terms, can it? The second PRONG is, did it? Right. And the special master here says you don't, you didn't have any challenge at PRONG-2 that did it. Is that a fair description of your position? We would disagree. I think our position was because they did not show, respondent that is, either PRONG-1 or PRONG-3, that you could not also meet PRONG-2. And that's what you say at page 37 of your brief. But if we were to find, under the standard of review, that they did do enough at one and three, you don't have a separate argument that they failed at PRONG-2. Is that right? I think based on prior Federal Circuit law, I think under, or decisions like in Capizano, and I think there was a footnote in Sharp as well, that it's not completely clear, but it's, I would say, intimated that if you make PRONG-1 and if you make PRONG-3, you could likely make PRONG-2 if you have those other two. It's not as clear as that under Capizano and Sharp, because in Sharp it was a footnote. I think it was footnote five. But I believe that if you have one and three, there's intimation that you could make PRONG-2. Going back to sole and substantial cause, let's just say that respondent was able to meet their health in PRONGs. That's a foundational matter that we contend and submit did not occur. That doesn't end the analysis. The analysis then is, did respondent, in proving their alternative factor, show that the vaccine was the sole, that's an important word, substantial cause, and that they could exclude the vaccine? Obviously, we submit that they could not and did not. If they take out, if you take out the articles that all discuss statistically, which in Knutson and Scheibace and Walther, this Court has rejected statistics as being able to show sole and substantial cause. If you take out the statistics, then there is what we submit, no evidence of how the vaccine had no role other than a conclusion that had no foundation and no explanation of how one excluded the flu vaccine. But the special master did find as fact that medical records established that H. flu likely, likely, predominance of the evidence, did cause his GPS. More conclusive evidence came from sputum findings and x-ray findings. These aren't statistics, these relate to evidence with respecting Mr. White. For purposes of this appeal, we are not arguing whether or not Mr. White had H. influenza. Okay. What we are arguing is... But the special master found that it caused GPS. The word that you used was appropriate, likely, caused. And likely caused is not more likely than not. It's not the higher standard or higher burden. Likely is more like possible. And I would point out to this Court that even the article submitted by respondent in support that the H. influenza can cause GPS, very clearly, like in Jew, J-U, I don't know if I'm pronouncing it properly, likely, possibly, possibly, possible, cause GPS. It also used the words rare. It rarely caused GPS. Never mind that this was a U.K. study. It wasn't a study about this particular influenza vaccine and that they found it was non-encapsulated H. influenza. We don't know what type of H. influenza we have here. But the reason why they used the word rare and possible is that when you look at their p-value, which is an incident rate, of how often from their study, which they're small studies, and again we're talking about rare events, but from their number of people, their incident rate was .06, not even a one percent, .001, which is a very small number. .06. Now you can compare that to the IOM, the Institute of Medicine, which you'll find in the appendix 645 to 649, which has a very nice chart of the influenza vaccines and the different cases, and their incident rates, their p-values are consistently higher than the H. influenza articles that are cited by respondents, such as STO. STO had a .76. That's seven percent higher than the H. influenza. Counsel, you're into your rebuttal time. You can continue or save it all or a mixture of the two. I will save it for rebuttal, but thank you. All right. Mr. Stein. Good morning. Morning. May it please the Court. Chief Special Master properly denied petitioner's vaccine injury claim based on his determination that respondent carried his burden of proving alternative causation by a preponderance of the evidence. Respondent established that a factor unrelated to petitioner's November 1, 2017 flu vaccine, namely an ongoing upper respiratory infection caused by the H. influenza bacterial infection, was principally responsible for causing petitioner's GBS. In reaching this determination, the Chief Special Master comprehensively addressed the evidence, the record, applied the appropriate legal standard, and articulated reasoned and supported explanations for his determination. Contrary to appellant's arguments, the Chief Special Master properly applied the outcome test, finding that respondent preponderantly showed that the H. flu infection can cause GBS and did cause petitioner's GBS within a medically acceptable timeframe. Moreover, he clearly explained that the record preponderantly showed that petitioner's H. flu infection was principally responsible for causing his GBS. Is there a difference between likely and highly and very likely and is likely not meet the preponderance test? Well, I believe the Chief in this decision used more likely than not throughout his decision and that clearly tracks with the preponderance standard. I think likely probably would too, but to the extent the argument is that the Chief Special Master did not use the language that tracks with the preponderance standard, that's just not true. Well, it's throughout the opinion, preponderance, more likely than not. But what had to be found by the preponderance was more likely than not that the H. flu infection was the sole substantial factor in Mr. White's GBS. Correct. You agree that's the burden and it's your view that the Special Master applied that and held you to that burden? Correctly applied that the burden and the factual determinations underlying that are subject to the arbitrary and capricious standard. And in meeting your burden, do you have to meet all three ALFIN prongs with respect to the flu infections? Yes, Your Honor. So once a primifacia case is established, the burden does shift to respondent. The respondent is held to the same burden under ALFIN to prove by preponderance of the evidence, ALFIN's prong one through three. In addition to that, respondent must prove more likely than not or by preponderant evidence that the factor unrelated was principally responsible. That's in tracking with the statute or in this court's case law, it includes in the sole substantial factor and thus excluding the vaccine as a substantial factor. Also by a preponderance and more likely than not, the vaccine was not a substantial factor. And did you rely on statistics in meeting your burden under any of the ALFIN prongs? And if so, what case of ours allows you to do that? Well, I'm not aware of any case that does not allow one to do that. But what respondent relied on was case control studies, peer review studies, epidemiological studies. Epidemiology is based in statistics. It's well established in this court's precedent that a respondent and claimant petitioner alike may present epidemiological evidence. That's relevant evidence that can be considered. In fact, it's some of the highest form of evidence. In many cases, petitioners don't have these types of studies that we presented here, and that's why they rely on a biological mechanism of causation. My friend on the other side was alluding to molecular mimicry. And I think my friend on the other side confuses biological mechanism with a medical theory, which is the burden under ALFIN. And that's what we presented with rigorous studies that, in addition to GUE, which I'll point out that petitioner's expert agreed shows an association between H. flu and GBS. That's the concession on ALFIN 1. We presented additional articles that show more persuasively the association in which petitioner's expert did not take up in his reports. Again, the chief special master discussed all this evidence. I don't believe there's an allegation that ALFIN looked into. At ALFIN Prompt 2, it would seem you shouldn't be able to use statistics because it's always going to be more likely that what caused any particular petitioners hear GBS is, say, an infection, as opposed to the vaccine, because the vaccine incidents happily are rare. So it would seem wrong to allow you to use statistics to meet your burden at ALFIN Prompt 2. Did you do that here? That wasn't— Sorry, your honor. Have we ever addressed that? No, that wasn't done here. On ALFIN Prompt 2, the chief primarily relied on the clinical picture, petitioner's medical records, buttressed by our infectious disease experts' review and opinions on that. Most notably, petitioner had contemporaneous with the onset of his symptoms attributed to GBS to an infection, to the H. flu infection. That's 14 treating providers. It's quite a lot, all contemporaneous with the onset of the symptoms, the hospitalization. So for ALFIN Prompt 2, the chief relied on the clinical picture, the medical records. And I think there was some discussion earlier about a case where it's Andreu. If ALFIN Prompt 1 and 3 are met, the opinion of treating providers on the logical sequence of cause and effect, ALFIN 2, are quite probative. Here, though, it seems like early on in the treatment records, at least at the hospital, the records mistakenly said that Mr. White had not received the vaccine in the pertinent year. Isn't it possible that that influenced the treaters' initial views that the vaccine, of course, couldn't have been the cause of the GBS because there was no vaccine administered? I don't know. I mean, it'd be speculative to say, so I don't know what we would do with that fact. The chief special master considered that evidence. He didn't find it persuasive as to undermining the 14 other treating providers that did attribute the GBS with the vaccine. And, again, I don't know if that's a, again, it's evidence that's addressed. It would have to be a factual determination that was clearly wholly implausible or arbitrarily capricious to reverse that finding. Thank you, counsel. Thank you, Your Honors. Ms. Rothmuller has some rebuttal time. We disagree that likely, word like likely, and probably meet. Could you speak up? I'm sorry. We disagree that the words likely or probably meet the standard of more likely than not. And if my memory serves me, the chief special master discussed that the vaccine likely could be excluded. Those were the words in his decision. In regard to the treatment records, early on, mistakenly saying there was no influenza, we absolutely submitted and agree that that had an influence on later medical records. If it's not, if it's incorrect at the beginning, as I think we probably have all had in our medical records, it just follows you until you finally see a report by the petitioner that he did have an influenza vaccine. And then later on, you could see in the records, even though it was six months later, the treaters saying that the influenza vaccine and the H influenza caused the GBS, both together. You can't tell the difference. Again, we're talking about two rare events. I think even the H influenza is rarer by the statistics, if we're going to look at statistics, than the influenza vaccine. But if we're talking about two rare events, we are at best, we cannot tell which one caused the GBS. When you cannot tell which caused the GBS, we are in what we call, and as the court has called, equipoise. Counsel, on page two of the special master's opinion, with respect to your first point, the special master says, having reviewed the medical records, expert reports, and associated literature, I deny an entitlement award. Our respondent has carried his burden of showing that a factor unrelated was the more likely explanation. More likely. That meets preponderance, does it not? More likely, yes. Those words. Later on in his decision, I don't have the exact page number, but I did indicate it in the appellate brief and or the reply that he later said that it could likely exclude the flu vaccine. It's not just sole substantial cause. This court has also included words as exclude, it excludes the vaccine. You'll see that in Walther. You'll see that in other Federal Circuit cases. And again, I think because we're talking about rare events, we are in equipoise. And when we are in equipoise, then you have to look at who has the burden. And in this case, the burden squarely lies on respondent. And we submit it was not met. And if an affirmation of these underlying decisions occur, then it renders this Federal Court's decisions in a number of matter of cases, you know, including Knutson, Scheifez, Walther, and, of course, Alfin. If we're talking about the Alfin prongs, because I have yet to see where petitioners have been able to meet their burden of prong one by using statistics because, as this court has noted, the infections will almost always outweigh or have more statistical chances of causing GBS. And in this case, too, it's not just an underlying infection that respondent has argued and that the Chief Special Master found as causing the GBS. It was specifically said the H influenza was the sole substantial cause. And if we affirm this decision, it also would render petitioners at large, any time they have a concurrent infection, it would render them unable to participate in the vaccine program because their statistics, as rejected by this court, will always have usually higher statistics in causing GBS. And that's not anything that this court has ever agreed upon. Counsel, as you can see, your red light has been on for a while. Oh, sorry. Thank you. Appreciate both arguments, and the case is submitted. Thank you, sirs.